# Exhibit A

| Declaration/Exhibit | Objection | Ruling |
|---|---|---|
| Plaintiff's Exhibit 3 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, as they were prepared by a third party, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices<br><br>Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices.<br><br>Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 4 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, as they were prepared by a third party, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices<br><br>Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices.<br><br>Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 5 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, and were prepared by an unknown third party<br><br>Rule 402, Fed.R.Evid. - the document is only relevant to claim construction, and is not admissible before the jury. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("Dr. Kamrin will not be permitted to testify as to the meaning of the terms "second end" or "common face," nor will he be permitted to provide his positions on how a person of ordinary skill in the art | |

would interpret the Court's claim construction for those terms. Indeed, explaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction.").

Rule 402, Fed.R.Evid. - the document is not admissible for purposes of claim construction, because it is not dated as of the 2008 effective filing date of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, ***as of the effective filing date of the patent application***.") (emphasis added).

Rule 403, Fed.R.Evid. - even if relevant, the probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. "Unfair prejudice" as used in Rule 403 means "an undue tendency to suggest decision on an improper basis." *Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009).  Here, it is improper for the jury to decide what a person of ordinary skill in the art would understand "static" or "dynamic" to mean. That is a question of claim construction for the Court to decide, and it is the province of the Court to instruct the jury.

Rule 403, Fed.R.Evid. - even if relevant, the probative value of the evidence is substantially outweighed by a danger of wasting time. Admitting this evidence will open up collateral issues at trial including controverting proof of what a person of ordinary skill in the art would have understood the terms to mean. *E.g., Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (holding that the district court properly excluded evidence that

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | | |
|---|---|---|---|
| | | would have opened up large areas of proof on collateral matters). | |
| | | Rule 703, Fed.R.Evid. - Plaintiff has not met its burden of showing that experts would reasonably rely upon the facts and data in this document in forming the opinions offered by Dr. Tobias. | |
| | | Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. - the document relates to claim construction, and was not timely disclosed as required by the Court's scheduling orders. | |
| | Plaintiff's Exhibit 6 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, and were prepared by an unknown third party | |
| | | Rule 402, Fed.R.Evid. - the document is only relevant to claim construction, and is not admissible before the jury. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("Dr. Kamrin will not be permitted to testify as to the meaning of the terms "second end" or "common face," nor will he be permitted to provide his positions on how a person of ordinary skill in the art would interpret the Court's claim construction for those terms. Indeed, explaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction."). | |
| | | Rule 402, Fed.R.Evid. - the document is not admissible for purposes of claim construction, because it is not dated as of the 2008 effective filing date of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application.") (emphasis added). | |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | Rule 403, Fed.R.Evid. - even if relevant, the probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. "Unfair prejudice" as used in Rule 403 means "an undue tendency to suggest decision on an improper basis." *Dream Games of Ariz. Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009). Here, it is improper for the jury to decide what a person of ordinary skill in the art would understand "static" or "dynamic" to mean. That is a question of claim construction for the Court to decide, and it is the province of the Court to instruct the jury. | |
| | Rule 403, Fed.R.Evid. - even if relevant, the probative value of the evidence is substantially outweighed by a danger of wasting time. Admitting this evidence will open up collateral issues at trial including controverting proof of what a person of ordinary skill in the art would have understood the terms to mean. *E.g., Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766, 772 (9th Cir. 1982) (holding that the district court properly excluded evidence that would have opened up large areas of proof on collateral matters). | |
| | Rule 703, Fed.R.Evid. - Plaintiff has the burden of showing that experts in this field would reasonably rely upon the facts and data in this document in forming the opinions offered by Dr. Tobias. | |
| | Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. - the document relates to claim construction, and was not timely disclosed as required by the Court's scheduling orders. | |
| Plaintiff's Exhibit 7 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, as they were prepared by a third party, and no witness having personal knowledge has testified that the documents | |

| | | |
|---|---|---|
| | accurately describe the actual operation of the accused devices. Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 8 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, as they were prepared by a third party, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices. Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 9 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the third-party documents are hearsay, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices. Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 12 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the documents are hearsay, as they were prepared by a third party, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices. | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices.<br><br>Rule 402, Fed.R.Evid. - not relevant unless it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 16 | Voltstar did not rely upon the CV90325 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| Plaintiff's Exhibit 17 | Voltstar did not rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| Plaintiff's Exhibit 18 | Voltstar did not rely upon these circuit schematics in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| Plaintiff's Exhibit 19 | Voltstar did not rely upon the CV90326A Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| Plaintiff's Exhibit 20 | Voltstar did not rely upon the CV90326 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| Plaintiff's Exhibit 21 | Voltstar did not rely upon the CV90326L Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| --- | --- | --- |
| Plaintiff's Exhibit 22 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the third-party documents are hearsay, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. - not relevant unless there is proof that it accurately describes the actual structure, function, and operation of the accused devices. Voltstar did not disclose or rely upon the Qi Specification V.1.2.4 in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |

| | | |
|---|---|---|
| Plaintiff's Exhibit 24 | Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. - the third-party documents are hearsay, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices<br><br>Rule 901, Fed.R.Evid. - not authenticated as describing the actual structure, function, and operation of the accused devices.<br><br>Rule 402, Fed.R.Evid. - not relevant unless there is proof that it accurately describes the actual structure, function, and operation of the accused devices. | |
| Plaintiff's Exhibit 25 | Rule 37(c)(1), Fed.R.Civ.P. - document was not produced during discovery<br><br>Rule 901, Fed.R.Evid. - document not authenticated.<br><br>Rule 402, Fed.R.Evid. - this document is only relevant to claim construction, and is inadmissible before the jury on the issue of infringement.<br><br>Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. - the document relates to claim construction, and was not timely disclosed as required by the Court's scheduling orders. | |
| Declaration of James McGinley in Opposition to Defendants' Motions for Partial Summary Judgment, filed at Docket #130-15.<br>Start of McGinley Declaration | Defendants object to the Declaration of James McGinley on grounds that he is testifying as an expert witness, and he was not disclosed as an expert witness as required by the Court's scheduling orders. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. | |
| 3. I have been informed that Superior, through the testimony of George Chen, has asserted that the Accused Devices of Superior (which are Qi Certified) do not practice the bit-encoding scheme and stand-by power | **Paragraph 3**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br><br>The witness does not have personal knowledge concerning whether the Accused Devices do in fact practice | |

| | |
|---|---|
| modes described in the Qi Wireless Power Transfer System Power Class 0 Specification Version 1.2.3, February, 2017 ("Qi Specification V1.2.3"), relied on in Plaintiff's Final Infringement contentions and the supporting Expert Report of Dr. John Tobias. In particular, paragraphs 5-34 below and Plaintiff Exs. 6-23 are submitted to rebut the testimony of Mr. Chen, and establish that the Accused Devices do in fact practice the bit-encoding scheme and stand-by power modes described in the Qi Specification V1.2.3. | the bit-encoding scheme and stand-by power modes described in the Qi Specification V1.2.3 - Rule 56(c)(4), Fed.R.Civ.P.; Rule 602, Fed.R.Evid. <br><br> Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders |
| 5. Prior to filing this lawsuit, Voltstar purchased, tested and sampled a version of the accused devices in this lawsuit, the AT&T Fast Wireless Charger, Model No. 06121 (Sku No. 4691J), which formed the basis for its Complaint and is shown in Voltstar's Final Infringement Contentions (See Plaintiff's Ex. 13, DE 110-16 at p. 4). The AT&T Fast Wireless Charger, Model No. 06121 tested by Voltstar utilizes a microcontroller chip identified as CV90325 (See Id.). It is my understanding that in the Expert Report of Dr. John M. Tobias in Support of Plaintiff's Final Infringement Contentions ("Tobias Decl.), Dr. Tobias purchased and tested an additional sample of the | **Paragraph 5**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. When James McGinley testifies about what "Voltstar" did, he is testifying about what someone else did, and he does not have personal knowledge. At his deposition, James McGinley admitted that he did not do any such testing, and that it was done by someone else. - Rule 56(c)(4), Fed.R.Civ.P.; Rule 602, Fed.R.Evid.; Rule 801, Fed.R.Evid. <br><br> James McGinley does not have personal knowledge of any tests by Dr. Tobias, and cannot testify concerning his "understanding". |

| | | |
|---|---|---|
| 1 | ==AT&T Fast Wireless Charger, Model No. 0612==. A true and correct copy of Plaintiff's Final Infringement Contentions was previously submitted as Exhibit 13, DE 11016, and is resubmitted herewith. | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | ==6==. Prior to filing this lawsuit, ==Voltstar obtained and reviewed the specification/data-sheet for the microcontroller chip identified as CV90325 The same specification/data-sheet that was reviewed by Voltstar== was also produced in this litigation by Superior as document numbers SUP000920SUP000933, a copy of which is attached herewith as Plaintiff's Ex. 16 ("CV90325 Specification"). | **Paragraph 6**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.  The witness cannot testify concerning what "Voltstar" allegedly did - he has not affirmatively established that he has personal knowledge of the matter stated in this paragraph. Moreover, Voltstar did not rely upon this document in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | ==7. The CV90325 Specification, on page 1, first bullet point (and title) states that CV90325 is "compliant with WPC V1.2.3 MP wireless charger standards." WPC V1.2.3 refers to the Qi Specification V1.2.3.== A true and correct copy of Parts 1 and 2 of the Qi Specification V1.2.3 was previously submitted as Plaintiff's Exhibit 3, DE 110-5, and is resubmitted | **Paragraph 7**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This testimony is hearsay. Rule 801, Fed.R.Evid. The witness does not have personal knowledge concerning whether CV90325 is "compliant" with any particular aspect of a wireless charging standard, or whether the Accused Devices actually operate as described in the documents. |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| with accompanying Declaration of Dr. John M. Tobias. | Moreover, Voltstar did not rely upon the CV90325 document in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 8. The CV90325 Specification, on page 9, states "[t]he principle of wireless power transfer is simply an open cored transformer consisting of primary and secondary coils and associated electronics." | **Paragraph 8**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br>Rule 402, Fed.R.Evid. - this testimony concerns claim construction, and is inadmissible before the jury. This issue of claim construction has already been decided by the Court.<br>Rule 402, Fed.R.Evid. - the document is not admissible for purposes of claim construction, because it is not dated as of the effective filing date of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, ***as of the effective filing date of the patent application*.**") (emphasis added).<br>Voltstar did not rely upon the CV90325 document in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| | by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 9. The CV90325 Specification, on page 9, also states "[t]he WPC [Qi] standard was developed to facilitate cross compatibility of compliant transmitters and receivers. The standard defines the physical parameters and the communication protocol to be used in wireless power." | **Paragraph 9**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.<br>Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that the "WPC [Qi] standard" accurately describes how the Accused Device actually operate, the statement is not relevant. |
| 10. Based on the above, prior to filing this lawsuit, Voltstar obtained and reviewed the Qi Specification V1.2.3. In particular, Section 5.2 of the Qi Specification V1.2.3 describes the "communications interface" of the Qi standard. | **Paragraph 10**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. The witness cannot testify concerning what "Voltstar" allegedly did - he has not affirmatively established that he has personal knowledge of the matter stated in this paragraph.<br>Rule 37(c), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.<br>Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that "the Qi Specification V1.2.3" accurately describes how the Accused Devices |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| | actually operate, what the document describes is not relevant. |
| | The testimony concerning what the document describes is hearsay. Rule 801, Fed.R.Evid. |
| 11. Section 5.2.2.2 of the Qi Specification V1.2.3 at p. 87., titled "Bit Encoding Scheme" describes the communication from the receiving coil to the transmitting coil, which the transmitter circuitry decodes and uses to instruct the transmitter circuitry. | **Paragraph 11**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. |
| | This testimony is hearsay. Rule 801, Fed.R.Evid. |
| | Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that "the Qi Specification V1.2.3" document accurately describes how the Accused Devices actually operate, what the document describes is not relevant. |
| The Power Receiver shall use a differential biphase encoding scheme to modulate data bits onto the Power Signal. For this purpose, the Power Receiver shall align each data bit to a full period t CLK of an internal clock signal, such that the start of a data bit coincides with the rising edge of the clock signal. The Receiver shall encode a ONE bit using two transitions in the Power Signal, such that the first transition coincides with the rising edge of the clock signal and the second transition coincides with the falling edge of the clock signal. The Receiver shall encode a ZERO bit using a single transition in the Power Signal, which coincides with the rising edge of the clock signal. | Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. |
| 12. Figure 36, at p. 88 illustrates the encoding scheme, demonstrating | **Paragraph 12**: The declaration testimony is not based upon personal knowledge, as required by Rule |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | that the ONE and ZERO values correspond to the frequency of the pulses of the encoded waveform. Necessarily, the frequency of the data bit pulses is monitored in order to distinguish the correct ONE and ZERO values. Two transitions in the given time (tCLK ) are decoded as a ONE, and a single transition is decoded as a ZERO.<br><br>13. The Qi Specification, Section 9, at. p 23 describes the off-state, as the stand-by mode of the accused device, stating:<br><br>[t]he purpose of the stand-by mode of operation is to reduce the power consumption of a wireless power transfer system when power transfer is not required. There are two ways to enter stand-by mode. The first, is when the Power Transmitter does not detect the presence of a valid Power Receiver (electrical device).<br><br>The second is when the Power Receiver (electrical device) transmits only an End Power Transfer Packet.<br><br>14. Section 9 of the Qi specification continues, stating, "[i]n standby | 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br>Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that "the Qi Specification V1.2.3" document accurately describes how the Accused Devices actually operate, the encoding scheme illustrated in that document is not relevant.<br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.<br><br>**Paragraph 13**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br>Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that "the Qi Specification V1.2.3" document accurately describes how the Accused Devices actually operate, the stand-by mode described in that document is not relevant.<br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.<br>Mr. McGinlay cannot testify as to his opinion that the "stand-by mode" described in the document describes the claimed "off-state" recited in the patent claims.<br><br>**Paragraph 14**: The declaration testimony is not based upon personal knowledge, as required by Rule | |

SNELL & WILMER<br>L.L.P.<br>LAW OFFICES<br>ONE ARIZONA CENTER<br>400 E. VAN BUREN, SUITE 1900<br>PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 1 | mode [the off-state], the Power Transmitter only monitors if a Power Receiver is placed on or removed from the Interface Surface of the Base Station." Id. | 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.
This testimony is hearsay. Rule 801, Fed.R.Evid.
Rule 402, Fed.R.Evid. - in the absence of testimony by a witness with personal knowledge establishing that "the Qi specification" document accurately describes how the Accused Devices actually operate, the standby mode described in that document is not relevant.
Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders |
| | **15.** Based on the CV90325 Specification, at least one version of the accused devices in this lawsuit, the AT&T Fast Wireless Charger, Model No. 06121 (Sku 4691J), utilizes the bit encoding described in the Qi Specification V1.2.3, Section 5.2.2.2, and the stand-by-mode described in the Qi Specification V1.2.3, Section 9. | **Paragraph 15**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.
Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. Mr. McGinley cannot testify as to his expert opinion that at least one version of the accused devices "utilizes the bit encoding described in the Qi Specification V1.2.3, Section 5.2.2.2, and the stand-by-mode described in the Qi Specification V1.2.3, Section 9."
In addition, Voltstar did not disclose or rely upon the CV90325 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice* |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| | *Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 18. The SP3400 Specification is compliant with Qi Specification V1.2.3, and states that "SP3400 is a highly integrated digital controller for wireless power transmitter compliant with WPC 1.2.3 standard." | **Paragraph 18**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br><br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br><br>In addition, Voltstar did not disclose or rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 19. The SP3400 Specification, at Section 7.1 (SUP000972), states "[t]he WPC wireless charging system is essentially a flat form of transformer. It transfers power from transmitter to receiver by coupling magnetic field between two coils." | **Paragraph 19**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br><br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br><br>Voltstar did not disclose or rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | | Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 20. The SP3400 Specification, at Section 7.1 (SUP000973), continues, stating "[t]he WPC protocol defines a one-way communication link from the receiver to the transmitter. It is an in-band communication link using the same inductive link between the transmitter and receiver and adopting the back-scatter modulation principle." | **Paragraph 20**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This testimony is hearsay. Rule 801, Fed.R.Evid. Voltstar did not disclose or rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 21. The SP3400 Specification, at Section 7.1 (SUP000973), continues, defining its sleep mode, stating "SP3400 periodically applies analog pings to look for the presence of a receiver. In case of non-existence, SP3400 enters sleep mode by powering down all its logic and NU1007 through the EN signal to minimize the idle power." (emphasis added). | **Paragraph 21**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This testimony is hearsay. Rule 801, Fed.R.Evid. Voltstar did not disclose or rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the document. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders, and thus, cannot testify concerning this hearsay document. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| 25. In all relevant sections, the three CV90326 Specifications are identical. | **Paragraph 25**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. |
| | This testimony is hearsay. Rule 801, Fed.R.Evid. |
| | Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. James McGinley cannot testify concerning his expert opinion that "all relevant sections" are identical. |
| | Voltstar did not disclose or rely upon "the three CV90326 Specifications" in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). |
| 26. Section 8 of all three specifications, found at Page 12 of both the CV90326 Specification and CV90326A Specification and Page 15 of the CV90326L Specification, describe their communication protocol, stating "[t]he amount of power transferred to the mobile device is controlled by the receiver. The receiver sends communication packets to the transmitter to increase power, decrease power, or maintain the power level. | **Paragraph 26**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. |
| | This testimony is hearsay. Rule 801, Fed.R.Evid. |
| | Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. |
| | Voltstar did not disclose or rely upon "the CV90326 Specification" or "the CV90326A Specification" or "the CV90326L Specification" in Voltstar's final infringement contentions, and Voltstar's expert |

| | | |
|---|---|---|
| The communication is purely digital, and communication 1's and 0's ride on top of the power link that exists between the two coils." (emphasis added). | did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 27. Section 8 of the three CV90326 Specifications also describes their low-power sleep-mode, stating "[a] feature of wireless charging system is the fact that when they are not charging a mobile device, the transmitter is in a very-low-power sleep mode. The transmitter remains in this low-power mode and periodically pings until the transmitter detects the presence of a receiver; only after a valid receiver is detected does the transmitter enter the negotiation phase of operation and commence with power transfer." The description on the first page of the three CV90326 Specifications also describes the low-power mode, stating "[t]he enhanced MCU and high-speed PWM can offer high High-precision power delivery, each analog part can be disable/enable, so chip consumes extremely low standby power." | **Paragraph 27**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.<br><br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br><br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. Voltstar did not disclose or rely upon "the three CV90326 Specifications" in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 28. The first page of the three CV90326 Specifications also states that they are all WPC (Qi) compliant, | **Paragraph 28**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. | |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| "supporting WPC [Qi] specifications," and in particular are "WPC-1.2.4 compatible." The three CV90326 MCU's comply with a newer version of the Qi Specification, Qi Wireless Power Transfer System Power Class 0 Specification Version 1.2.4, February, 2018 ("Qi Specification V1.2.4"). | This testimony is hearsay. Rule 801, Fed.R.Evid. <br><br> Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. Voltstar did not disclose or rely upon "the three CV90326 Specifications" in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 29. Importantly, in all relevant parts relied on by Voltstar and Dr. Tobias in his report, Qi Specification V1.2.4 and Qi Specification V1.2.3 are identical. In particular Sections 5.2 up to at least section 5.2.2 (describing the "communications interface" and "bit encoding scheme"), and Section 9 (describing the "stand-by power") of both versions are identical, including the portions quoted in paragraphs 11-13 above. The relevant excerpts of the Qi Specification V1.2.4 are attached herewith as Plaintiff's Exhibit 22. | **Paragraph 29**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. <br><br> This testimony is hearsay. Rule 801, Fed.R.Evid. <br><br> Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - The witness testimony concerning which parts and which excerpts are "relevant" is opinion testimony. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. | |
| 31. As noted above, circuit schematic SUP000001 identifies the MCU as SP3400, which | **Paragraph 31**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule | |

| | | |
|---|---|---|
| complies with Qi Specification V1.2.3, and covers accused device Sku No. 4794K. | 602, Fed.R.Evid. The witness does not have personal knowledge concerning whether something "complies with Qi Specification V1.2.3"<br><br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br><br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - The witness testimony concerning whether something "complies with Qi Specification V1.2.3" and whether something "covers accused device Sku No. 4794K" is opinion testimony. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.<br><br>Voltstar did not disclose or rely upon the SP3400 Specification in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 32. As noted above, circuit schematic SUP001304, 1307, 1308 and 1310 identify the MCU as one of three CV90326 MCUs, which all comply with Qi Specification V1.2.4, and cover accused device Sku Nos. 4205L, 4507L, 4478L, 4488L, 4691L, 4979L, 4424N, and 4420N. | **Paragraph 32**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. The witness does not have personal knowledge concerning whether the devices "comply with Qi Specification V1.2.4" and "cover accused device" as stated.<br><br>This testimony is hearsay. Rule 801, Fed.R.Evid.<br><br>Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - The witness testimony concerning whether the devices "comply with Qi Specification V1.2.4" and whether | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

documents "cover accused device Sku Nos. 4205L, 4507L, 4478L, 4488L, 4691L, 4979L, 4424N, and 4420N" is opinion testimony. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.

Voltstar did not disclose or rely upon the CV90326 Specification, or any documentation concerning CV90325, in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015).

33. Circuit Schematic SUP001309 does not clearly identify the MCU, however SUP001309 covers accused device Sku Nos. 4691J and its white counterpart, 4694J. Sku No. 4691J was reviewed and tested by both Voltstar and its Dr. Tobias, and the MCU inside the device was clearly identifiable as CV90325, which complies with Qi Specification V1.2.3, and covers accused device Sku Nos. 4691J and 4694J.

**Paragraph 33**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. The witness cannot testify concerning what "Voltstar" allegedly reviewed and tested, and he does not have personal knowledge concerning what Dr. Tobias allegedly reviewed or tested - he has not affirmatively established that he has personal knowledge of the matter stated in this paragraph. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - The witness testimony concerning whether the device "complies with Qi Specification V1.2.3" is opinion testimony. So is his testimony about what "covers accused device Sku Nos. 4691J and 4694J." James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.

Voltstar did not disclose or rely upon circuit schematic SUP001309 or

documentation concerning CV90325 in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documents. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015).

34. Accordingly, Voltstar has confirmed that 11 of the 12 identified accused devices utilize MCU SP3400, MCU CV90325, or one of the three CV90326 MCUs, which all explicitly state their compliance the Qi Specification, and their use of the bit encoding scheme and stand-by power modes described in their specifications in accordance with the Qi Specifications V1.2.3.

**Paragraph 34**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. The witness cannot testify concerning what "Voltstar" has allegedly "confirmed". This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports.

The testimony "which all explicitly state their compliance the Qi Specification" is hearsay. Rule 801, Fed.R.Evid. So is the remaining testimony in this paragraph concerning what the documents state.

Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - The witness testimony concerning what the accused devices "utilize" and "use of the bit encoding scheme and stand-by power modes described in their specification in accordance with the Qi Specifications V1.2.3" is opinion testimony. James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders.

Voltstar did not disclose or rely upon any of this information in Voltstar's final infringement contentions, and Voltstar's expert did not consider or rely upon the documentation upon

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | which James McGinley is attempting to testify. Voltstar's expert did not consider or rely upon this information in his expert report. Voltstar should not be allowed to rely upon new infringement contentions that were not included in Voltstar's final infringement contentions, and which were not disclosed in Voltstar's expert report. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P.; *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009, 1013-14 (Fed. Cir. 2015). | |
| 35. Defendant's Exhibit 17, the Supplemental Declaration of George Chen ("Chen Decl.") and Defendant's Exhibit 16 mischaracterizes the nature of the full diagram showed in Exhibit 16, and embedded in ¶ 17 of the Chen Decl. Defendant's Exhibit 16 and Chen Decl. ¶ 17 deliberately cut off the bottom portion of the diagram showing "the load pulses for signaling back to the TX." The full diagram is shown below, including the "load pulses" which are sent from the receiver back to the transmitter embedded on the reflected power signal. | **Paragraph 35**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports. The testimony concerning the contents of the documents is hearsay. Rule 801, Fed.R.Evid. Rule 402, Fed.R.Evid. - the "full diagram" is not relevant. George Chen only referred to the signal waveform included in his declaration as illustrating his testimony concerning what the actual waveform would look like. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. He cannot testify concerning his opinion about what the "full diagram" allegedly shows. Rule 402, Fed.R.Evid. - In the absence of testimony from a witness with personal knowledge establishing that the diagram referred to be Mr. McGinley accurately describes the actual operation of the accused devices, this testimony is not relevant. | |

| | |
|---|---|
| 36. Attached herewith as Plaintiff's Ex. 24, is true and correct excerpt of pages 19-20 from the Texas Instruments Specification which was used for Defendant's Exhibit 16. Page 20 shows the diagram, and page 19 provides further description, describing the red square waves, as "the load pulses for signaling back to the TX." TX refers to the Transmitter, which is the wireless charger circuitry. Both Plaintiff's Ex. 24 and Defendant's Exhibit 16 are excerpts from the Texas Instruments specification that was previously submitted as Plaintiff's Ex. 12, and marked as Defendant's Ex. 60 during depositions. | **Paragraph 36**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports. The testimony concerning the contents of Exhibit 24 is hearsay. Rule 801, Fed.R.Evid. Rule 402, Fed.R.Evid. - In the absence of testimony from a witness with personal knowledge establishing that the portions of the Texas Instruments Specification relied upon by this witness accurately describe the actual operation of the accused devices, this testimony is not relevant. George Chen only referred to a signal waveform appearing at one location in Exhibit 24 as *illustrating his testimony* concerning what the actual waveform would look like. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. He cannot testify concerning his opinion about what the "full diagram" allegedly shows. |
| 37. Though the red "load pulses" are all of the same frequency, this drawing is for illustration purposes, and the "load pulses" as shown in the drawing would represent a constant string of "ONEs" in the digital code, and not the actual embedded signal, which would be sending a string of mixed ZEROS and ONEs. See, Horenstein Depo., at p. 155, ln. 1 – p. 157, ln. 16. | **Paragraph 37**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid. This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports. The testimony concerning the contents of the document is hearsay. Rule 801, Fed.R.Evid. Rule 402, Fed.R.Evid. - In the absence of testimony from a witness with personal knowledge establishing that the portions of the document relied upon by this witness |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | | accurately describe the actual operation of the accused devices, this testimony is not relevant. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. He cannot testify concerning his opinion about what the "full diagram" allegedly shows. | |
| | 38. Defendant's Exhibit 18, the Supplemental Declaration of Dr. Mark Horenstein, mischaracterizes the nature of the website electrical4u.com, the source of Plaintiff's Ex. 5 accompanying the Declaration of Plaintiff's expert, Dr. John Tobias. | **Paragraph 38**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.  This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports. The testimony concerning the contents of the document is hearsay. Rule 801, Fed.R.Evid. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. The testimony of James McGinley concerning whether Plaintiff's expert "mischaracterizes" a website is an attempts to circumvent the Court's orders and have Mr. McGinley testify as an undisclosed expert witness. | |
| | 39. Dr. Horenstien references the "About" page, and cites an advertising disclaimer, and uses that to assert that "the foundation of the electrical4u.com site is for advertising products...not to act as an archival resource..." See Defendant's Exhibit 16 at ¶ 16-7. Though the website does contain Amazon.com (and other) | **Paragraph 39**: The declaration testimony is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.  This is, in effect, an attempt to have James McGinley provide expert testimony that was not timely disclosed in Voltstar's expert reports. The testimony concerning the contents of the document is hearsay. Rule 801, Fed.R.Evid. Rule 37(c)(1), Fed.R.Civ.P.; Rule 16(f)(1)(C), Fed.R.Civ.P. - James | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| advertising, that is not "the foundation of the website," but simply the (common) tool the website uses to remain a free resource. The About page explicitly states that they "are dedicated to the teaching and sharing of all things related to electrical and electronics engineering." The website features "over 1000 electrical and electronics articles" and the articles "are written by industry experts and engineers in the electrical, electronics, control systems, and biomedical industries," demonstrating that the website is "an archival resource" for people skilled in the art. Attached herewith as Plaintiff's Exhibit 25, is a true and correct copy of the "About" page of the website electrical4u.com. | McGinley was not disclosed as an expert witness, and did not provide an expert witness report, as required by this Court's scheduling orders. The testimony of James McGinley attempting to rebut Plaintiff's expert is an attempt to circumvent the Court's orders and have Mr. McGinley testify as an undisclosed expert witness. | |
| End of McGinley Declaration. | | |
| Declaration of Dr. John M. Tobias in Support of Plaintiff's Final Infringement Contentions, filed at Docket #130-2.<br><br>Start of Tobias Declaration | Defendants object to this declaration for the reasons set forth in Defendants' Motion to Exclude Expert Testimony, filed at Docket #122.<br>The proponent of this expert testimony has failed to show that the expert testimony meets the requirements of Rule 702(b), (c), and (d), Fed.R.Evid. | |
| 11.   The circuitry of the accused device includes switch circuitry that connects and disconnects power to the electrical device. See, for example, Exhibit 3, Section 5.1.1 | **Paragraph 11**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the | |

and Figure 16 of the Qi Specification, at p. 44 – 46 ("From a system control perspective, power transfer from a Power Transmitter to a Power Receiver comprises four phases in the Baseline Power Profile, namely selection, ping, identification & configuration, and power transfer."); See also, Exhibit 11, element no. 2, identifying the switch circuitry for delivery of power to the power coils.

AC input). Dkt. #87, Order, at 24. Rule 702, Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

15. The accused device contains control circuitry in the wireless charging pad prior to the primary coil in the wireless charging pad. The control circuitry contains an internal switch which controls the power flow to the primary coil. As described in the Qi Specification and in more detail below, the system control operates in "four phases in the Baseline Power Profile, namely selection, ping, identification & configuration, and power transfer." See, Exhibit 3, Section 5.1.1 and Figure 16 of the Qi Specification, at p. 44 – 46; See also, Exhibit 11, element no. 2, identifying the switch circuitry for delivery of power to the power coils.

**Paragraph 15**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 16. In the "selection" phase, the power signal is not flowing to the primary coil, and "the Power Transmitter determines if it will proceed to the ping phase after detecting the placement of an object" on the charging pad. See, Ex. 3, Qi Specification Section 5.1.2.1 at p. 50. | **Paragraph 16**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| 17. If an object is detected, the charging pad enters the "ping phase" and the<br><br>"Power Transmitter shall apply a power signal." "If the Power Transmitter does not<br><br>detect the start of a Packet in the time window *t* ping after the Primary Cell current amplitude reaches 50% of the stable level, the Power Transmitter shall remove the Power Signal | **Paragraph 17**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| (i.e. reduce the Primary Cell current to zero) within *t* terminate ." See, Id., Section 5.1.2.2 at p. 52, and Figure 19(a). | *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| 18. One skilled in the art would recognize the ping signal as one or more pulses to detect whether or not the object present on the wireless charging pad is a compatible electronic device. If a return signal (pulses) is not received within the specified time frame, the power signal is terminated, and the charger returns to the selection phase. See Id.; See also Id., Section 10.1 at p. 124-125, Figure 44 and Table 63. ("The Power Transmitter applies a very short pulse to its Primary Coil, at an Operating Frequency *f* od , which corresponds to the resonance frequency of the Primary Coil and series resonant capacitance.") | **Paragraph 18**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| 19. If a return signal is detected, the charger | **Paragraph 19**: The expert failed follow the Court's claim | |

| | | |
|---|---|---|
| moves to the Identification and Configuration phase. In this phase, the Power transmitter provides a power signal to "identify the Power Receiver [the electronic device] and collect configuration information." See, Id., Section 5.1.2.3 at p. 53. Similar to the ping phase, if proper return signals are not received in the specified time frame, the power signal is terminated. See, Id., Fig. 20(a). | construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| 20. "Based on the configuration information received from the Power Receiver, the Power Transmitter can create a Power Transfer Contract." See, Id., Section 5.1.2.3.1 at p. 56. In the power transfer phases, power is provided to the Power transmitter under parameters established during the prior phases. If these parameters are violated, the controls abort the power transfer (switches to an offstate). | **Paragraph 20**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan* | |

<table>
<tr><td></td><td>

*Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.

</td></tr>
</table>

| | | |
|---|---|---|
| 22. A PHOSITA would recognize that the system (the combination of the electrical device and wireless charging pad cable assembly) contains a transformer as defined above. The charging pad contains a primary coil and the electronic device contains a secondary coil. When used in the system, the respective coils are positioned adjacent to one another where the magnetic field of the primary coil is inductively linked to the secondary coil by magnetic lines of force that allow the transmission of electrical energy from one coil to the other through magnetic induction. See, e.g. Ex. 10, 2004 International Patent Application titled "Wireless Charging and Battery Pack Using Radio Frequency Identification Technology," WO 2006/001577 ("Jung"), which refers to the coils of a wireless charger and the "battery pack" being charged as a transformer throughout the application, for example, noting: | **Paragraph 22**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019).<br><br>The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at \*3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction.").<br><br>The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's scheduling order. Rule 16(f)(1)(C), | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| A separative transformer is provided between 'the wireless charging pad 200 and the battery pack 100 so that a primary side of the transformer is provided in the wireless charging pad 200 and a secondary side of the transformer is provided in the battery pack 100. | Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. | |
| Jung at p. 15, lns 13-18, Claim 1 at p. 42 ("a primary-side transformer formed by constructing a pad core, which is adapted to generate induced electromotive force") | | |
| 23. Though the coils may be separated, they are a "static" electrical device as understood by a PHOSITA. Electrical machines which generate electrical energy can be divided into two broad categories, dynamic and static. | **Paragraph 23**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019).<br><br>The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of | |

| | | |
|---|---|---|
| | claim terms is the equivalent of construing the Court's construction."). | |
| | The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's scheduling order. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. | |
| 24. A "static" or "stationary" electrical machine "remains stationary throughout its operation" and does not use motion to generate electromotive force. See Ex. 6, an article from the engineering website https://allaboutteng.com/, titled Types of Electrical Machines, publicly available at the URL: https://allaboutteng.com/types-ofelectrical-machines/; Ex. 5, an article from the electrical engineering website https://www.electrical4u.com, titled Electrical Machines?, publicly available at the URL: https://www.electrical4u.com/electric-machines/. | **Paragraph 24**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019).

The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction.").

The websites relied upon by the expert do not meet the requirements of Rule 703, Fed.R.Evid.

The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's | |

| | | |
|---|---|---|
| | | scheduling order. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. | |
| | 25. A "dynamic" electrical machine contains moving parts which convert between mechanical energy and electrical energy. Id. For example, an electric motor converts electrical energy into mechanical energy, and an electric generator converts mechanical energy into electrical energy. | **Paragraph 25**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019).

The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction.").

The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's scheduling order. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. | |
| | 26. In the context of electrical devices, it is well understood in the art that the terms "static" and "dynamic" do not refer to whether an element of the device can be moved | **Paragraph 26**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp.* | |

| | | | |
|---|---|---|---|
| 1 | while not in use. The terms refer to the motion (or lack of motion) required for the generation or conversion of electrical energy. A transformer is a static device, because in operation, the coils do not move. In fact, motion of the coils will prevent, or severely limit, the inductive coupling between the primary and secondary coil. | *v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). | |

The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019).

The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction.").

The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's scheduling order. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P.

**Paragraph 27**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because he is testifying on claim construction, which is a question of law to be determined by the Court, not the jury. *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *ATEN Int'l Co., Ltd. v. Uniclass Tech. Co.*,

27. Accordingly, a PHOSITA would readily understand that the primary coil of the accused device, in combination with the secondary coil of the mobile electrical device is a static electrical component, and a transformer. When in operation, the coils remain stationary, and electrical energy is transferred without any moving parts.

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 1 | | 932 F.3d 1364, 1370 (Fed. Cir. 2019). |
| 2 | | |
| 3 | | The expert testimony is inadmissible, because it is the equivalent of construing the Court's claim construction. *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, 2017 WL 3457104, at *3 (E.D. Tex. Aug. 11, 2017) ("[E]xplaining how a person of ordinary skill in the art would interpret the Court's construction of claim terms is the equivalent of construing the Court's construction."). |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | The expert opinion relates to claim construction, and was not timely disclosed as required by the Court's scheduling order. Rule 16(f)(1)(C), Fed.R.Civ.P.; Rule 37(c)(1), Fed.R.Civ.P. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | ==30. Accordingly, the function of the transformer is described as "the transmission of electrical energy from one coil to the other through magnetic induction." The result of this transmission is that electrical voltage received at the primary coil is converted to magnetic flux, which in turn is converted to electrical voltage received at the secondary coil. The accused device performs the same function (the transfer of electrical energy from a primary to secondary coil), to achieve the same result as transformer (the transmission of voltage to the secondary coil).== | **Paragraph 30**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | Under the guise of applying the doctrine of equivalents, Voltstar is attempting to erase a meaningful structural limitation of the claim that |
| 27 | | |
| 28 | | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

the transformer must be a static electrical component. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (in banc), *cert. denied*, 485 U.S. 961 (1988)

Voltstar was required to prove equivalency with "particularized testimony and linking argument." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997).

Infringement contentions that state only boilerplate contentions are insufficient to disclose a doctrine of equivalents theory. *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. April 11, 2014) ("RR did not sufficiently describe how, for each claim element, a component of a charted product performed the same function, in the same way, to achieve the same result."); *Implicit Networks Inc. v. Hewlett–Packard Co.*, No. 10-cv-03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sept. 7, 2011) (finding contentions must provide "specific analysis, on an element-by-element basis, as to its theory of why there is infringement under the doctrine of equivalents.").

31. The above function and result are achieved in a transformer by way of "two or more coils of wire positioned adjacent to one another where the magnetic field of a first coil is inductively linked to a second coil by magnetic lines of force." The accused device uses the same method to transfer electrical voltage from the primary coil to the secondary coil. When

**Paragraph 31**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| the secondary coil of the electronic device is placed adjacent to the primary coil of the charging pad, the coils are inductively linked. | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.<br><br>Under the guise of applying the doctrine of equivalents, Voltstar is attempting to erase a meaningful structural limitation of the claim that the transformer must be a static electrical component. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (in banc), *cert. denied*, 485 U.S. 961 (1988).<br><br>Voltstar was required to prove equivalency with "particularized testimony and linking argument." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997).<br><br>Infringement contentions that state only boilerplate contentions are insufficient to disclose a doctrine of equivalents theory. *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. April 11, 2014) ("RR did not sufficiently describe how, for each claim element, a component of a charted product performed the same function, in the same way, to achieve the same result."); *Implicit Networks Inc. v. Hewlett–Packard Co.*, No. 10-cv-03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sept. 7, 2011) (finding contentions must provide "specific analysis, on an element-by-element | |

basis, as to its theory of why there is infringement under the doctrine of equivalents.").

32. The Wireless Power Consortium (WPC) is the developer of the "Qi" wireless standard that is employed by the accused devices of Superior. The Qi standard itself states its "power transfer" is done by a "loosely coupled transformer." See Ex. 7, a "How it works" presentation provided by the Wireless Power Consortium, publicly available at the url: https://www.wirelesspowerconsortium.com/data/downloadables/1/3/7/4/how-itworks.pptx.

**Paragraph 32**: The declaration testimony that the Qi wireless standard is employed by the accused devices of Superior is not based upon personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., and by Rule 602, Fed.R.Evid.

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The Wireless Power Consortium document quoted by the witness is hearsay, and no witness having personal knowledge has testified that the documents accurately describe the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the Wireless Power Consortium document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.

The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Wireless Power Consortium document does not accurately describe the actual

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 33. In the introduction to the Qi specification, the accompanying, Ex. 8 (Introduction to the Power Class 0 Specification), the Qi standard specially references that its coils are equivalent to a transformer, stating at p 8-9: <br><br> The basic physical principle that governs the functionality defined in the Qi wireless power transfer specification is magnetic induction: the phenomenon that a time-varying magnetic field generates an electromotive force in a suitably positioned inductor. In a Qi wireless power transfer system, this electromotive force produces a voltage across the terminals of a coil-shaped inductor, and is used to drive the electronics of an appropriate load to which it is connected. Conventional transformers use the same effect to achieve inductive power transfer between a primary and a secondary coil that are strongly coupled by means of a magnetic core. (emphasis added) | **Paragraph 33**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). <br><br> The Qi wireless power transfer specification quoted by the witness is hearsay, and no witness having personal knowledge has testified that the document accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. <br><br> The expert testimony is not relevant unless the Qi wireless power transfer specification accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. <br><br> The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid. <br><br> The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Qi wireless power transfer specification does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 34. Others in the art routinely refer to the coils of wireless chargers as transformers. See e.g., Ex. 9 , a technical paper published by Texas | **Paragraph 34**: The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp.* | |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| Instruments, Inc., publicly available at the url: https://www.mouser.com/pdfDocs/TI-Designing-a-Qicompliant-receiver-coil.pdf, titled Designing a Qi-compliant receiver coil for wireless power systems, Part 1, noting:<br><br>For many near-field wireless power systems such as the one specified by the WPC [Qi/Wireless Power Consortium], the behavior of the magnetic power transfer can be modeled by a simple transformer.<br>…<br>The transformer in a Qi-compliant system consists of two separate physical devices, the transmitter (Tx) and the receiver (Rx), each with an isolated coil. (emphasis added) | *v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The Texas Instruments paper is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.<br><br>The expert testimony is not relevant unless the Texas Instruments paper accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.<br><br>The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Texas Instruments paper does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 35. The above function and result are achieved in a transformer by "two or more coils of wire positioned adjacent to one another where the magnetic field of a first coil is inductively linked to a second coil by magnetic lines of force." The accused device uses the same method to transfer electrical voltage from the primary coil to the secondary coil. | **Paragraph 35**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a | |

transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

Under the guise of applying the doctrine of equivalents, Voltstar is attempting to erase a meaningful structural limitation of the claim that the transformer must be a static electrical component. *Pennwalt Corp. v. Durand-Wayland, Inc*., 833 F.2d 931, 935 (Fed. Cir. 1987) (in banc), *cert. denied*, 485 U.S. 961 (1988).

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.

Voltstar was required to prove equivalency with "particularized testimony and linking argument." *Texas Instruments Inc. v. Cypress Semiconductor Corp*., 90 F.3d 1558, 1566 (Fed. Cir. 1996), *cert. denied*, 520 U.S. 1228 (1997).

Infringement contentions that state only boilerplate contentions are insufficient to disclose a doctrine of equivalents theory. *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. April 11, 2014) ("RR did not sufficiently describe how, for each claim element, a component of a charted product performed the same function, in the same way, to achieve the same result."); *Implicit Networks Inc. v. Hewlett–Packard Co*., No. 10-cv-03746 SI, 2011 WL 3954809, at *3 (N.D. Cal. Sept. 7, 2011) (finding contentions must provide "specific analysis, on an element-by-element basis, as to its theory of why there is

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

infringement under the doctrine of equivalents.").

38. The Qi specification part 4, defines the "Power Transfer Contract" as "a set of boundary conditions on the parameters that characterize the power transfer from a Power Transmitter to a Power Receiver. Violation of any of these boundary conditions causes the power transfer to abort." See Ex. 4, The Qi specification part 4, at p. 11.

**Paragraph 38**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.

The expert testimony is inadmissible, because it does not reliably apply the

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid.

**Paragraph 39**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury

39. The power transfer is aborted by the sending of an "End Power Transfer Packet," which directs the system to enter the off-state, and cease (interrupt) sending the power signal to the power coil. For example, an off state (where the "state of the system when the power draw from the power source is substantially reduced or eliminated") may occur when the battery of the device receiving the charge is fully charged. This situation is listed within the boundary conditions as 'Charge Complete' as found in the Qi specification, Section 5.2.3.2 End Power Transfer Packet (0x02) (See Table 29.) Other conditions are provided within the referenced Table 29 where the power draw is reduced or eliminated.

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | concerning the Court's claim construction. Rule 403, Fed.R.Evid.<br><br>The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid.<br><br>The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 40. The Qi Specification, Section 9, at. p 23 describes the off-state, as the stand-by mode of the accused device, stating: [t]he purpose of the stand-by mode of operation is to reduce the power consumption of a wireless power transfer system when power transfer is not required. There are two ways to enter stand-by mode. The first, is when the Power Transmitter does not detect the presence of a valid Power Receiver (electrical device). The second is when the Power Receiver (electrical device) transmits only an End Power Transfer Packet. | **Paragraph 40**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, | |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 1 | | Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. | |
| 2 | | | |
| 3 | | The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid. | |
| 8 | | | |
| 9 | | | |
| 10 | | The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid. | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | **Paragraph 41**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). | |
| 20 | 41. Section 9 of the Qi specification continues, stating, "[i]n stand-by mode [the off-state], the Power Transmitter only monitors if a Power Receiver is placed on or removed from the Interface Surface of the Base Station." Id. | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic | |
| 28 | | | |

| | | |
|---|---|---|
| | one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.<br><br>The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid.<br><br>The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid.<br><br>The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 42. One skilled in the art would recognize the stand-by mode as substantially reducing | **Paragraph 42**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | <mark>power, by turning off the power signal to the primary coil, and substantially reducing the power draw of the charging pad.</mark> | (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). |
| 5<br>6<br>7<br>8<br>9 | | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). |
| 10<br>11<br>12<br>13<br>14<br>15 | | The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. |
| 16<br>17<br>18 | | The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. |
| 19<br>20<br>21<br>22 | | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the Court's claim construction. Rule 403, Fed.R.Evid. |
| 23<br>24<br>25<br>26 | | The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid. |
| 27<br>28 | | The expert testimony is inadmissible, because it does not reliably apply the |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. | |
| 44. See paragraphs 15 – 20, and 36 – 42 above. One skilled in the art would recognize that the stand-by mode disconnects power to the unnecessary parts of the circuit, and substantially reduces the power draw of the device. | **Paragraph 44**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009). | |
| | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). | |
| | The Qi specification document is hearsay, and no witness having personal knowledge has testified that the portion of the document relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. | |
| | The expert testimony is not relevant unless the Qi specification document accurately describes the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | | concerning the Court's claim construction. Rule 403, Fed.R.Evid. |
| | | The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid. |
| | | The expert testimony is inadmissible, because it does not reliably apply the Court's claim construction to the facts of this case if the Qi specification document does not accurately describe the actual operation of the accused devices. Rule 702(d), Fed.R.Evid. |
| | 45. I tested the sample of the accused device (AT&T Wireless Charger Model #06121) to determine its electrical characteristics, to include the voltage waveform on its transformer coils, during a quiescent state and during charging. The setup of the test was to place a USB voltage/current meter into the USB input to the charger and to attach a digitizing oscilloscope to the coil leads in order to measure the voltage waveform. A wireless receiver was attached to a partially-discharged cellular phone and aligned with the coils of the charger to load the charger during its charging, or 'on' state. An image of the testing set-up is shown below. | **Paragraph 45**: The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state." The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power saving feature of the 648 Patent was not present. Rule 702(c) & (d), Fed.R.Evid.

The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static |

| | | |
|---|---|---|
| | electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).<br><br>The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid.<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the correct claim construction. Rule 403, Fed.R.Evid. | |
| 46. During the quiescent state, that is, without the load placed upon the charger pad, and when power was not delivered to the power coils (the off-state) the voltage delivered was approximately 9.193 volts DC, as delivered from the charger's wall plug adapter, which converts 120 volts AC (typical household utilization voltage) to the USB plug and thence to the Wireless Charger. Current draw during the off state was approximately 0.0197 A, resulting in a power draw of approximately 180 mW. The below image shows the voltage and current readings taken form the accused device in the off-state, when no load was present. | **Paragraph 46**: The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state." The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power saving feature of the 648 Patent was not present. Rule 702(c) & (d), Fed.R.Evid.<br><br>The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).<br><br>The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic | |

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the correct claim construction. Rule 403, Fed.R.Evid.

47. The voltage waveform measured on the coil generally resembled the expected 'analog ping' without an object on the charging plate, and is shown in the image below. See for example, the attached Exhibit 12, publication of Qi Wireless WPC 1.1 complaint specifications from Texas Instruments, and produced by Superior as Document Nos/ SUP001346-001394 ("TI WPC 1.1 Specification"), at p. 18, waveform (a).

**Paragraph 47**: The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state." The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power saving feature of the 648 Patent was not present. Rule 702(c) & (d), Fed.R.Evid.

The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan*

SNELL & WILMER

L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

*Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the correct claim construction. Rule 403, Fed.R.Evid.

The documents referenced are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.

The expert testimony is inadmissible, because it is not based upon sufficient facts or data if the referenced documents do not accurately describe the actual operation of the accused devices. Rule 702(b), Fed.R.Evid.

48. When the pad was in the on-state (a charging load is present), the input voltage increased slightly, to 9.240 VDC and the current increased to approximately 0.6776 A, over a thirty-fold increase. I noted the activation of the blue LED light around the

**Paragraph 48**: The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state." The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| periphery of the pad, indicating charging had begun. At this point, the power draw was approximately 6,261 mW. The below image shows the voltage and current readings taken form the accused device in the on-state, when a load was present. | saving feature of the 648 Patent was not present. Rule 702(c) & (d), Fed.R.Evid.

The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the correct claim construction. Rule 403, Fed.R.Evid. |
| 49. During the on-state, the current draw of the accused device is approximately 6,261 mW. In the off-state, the power draw is substantially eliminated, resulting in power-draw of approximately 180 mW, elimination of approximately 98.14% of the power draw when compared to the on-state. | **Paragraph 49**: The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state."  The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power saving feature of the 648 Patent was |

| | | |
|---|---|---|
| | | not present. Rule 702(c) & (d), Fed.R.Evid. |
| | | The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009). |
| | | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). |
| | | The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid. |
| | | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning the correct claim construction. Rule 403, Fed.R.Evid. |
| | 50. One skilled in the art would understand that the Qi specification, as described in Section 5.2, requires detecting (monitoring) a series of waveforms (a pattern of pulses) from a primary transformer winding or primary coil. Frequency is the positioning of a series of pulses in time. Knowing the relative position of the pulses in | **Paragraph 50**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying that methodology, the expert attempts to show infringement under the doctrine of equivalents by testifying that one skilled in the art would understand that the language taken from the Qi specification is equivalent to monitoring the |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| time enables the pulses to be recognized as data bits. Accordingly, the accused Qi wireless device monitors the frequency of the pulses to recognize the data bits as meaningful instructions, and the control circuitry drives the switch circuitry based on the data bits (the frequency of pulses). The Qi specification monitors the data bits (frequency of the pulses) directly, utilizing modulation and demodulation. | frequency under a distorted definition of "frequency". Rule 702(c), Fed.R.Evid. |
| | The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. the expert is attempting to expand the scope of the claim back to what it was before amendment of the claim, by testifying that "The Qi specification monitors the data bits" and suggesting that merely monitoring the pulses meets the requirements of the claim. Rule 702(c), Fed.R.Evid.; *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-37 (1942) ("By the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material."). |
| | The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009). |
| | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). |
| | The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. Rule 403, Fed.R.Evid. | |
| 51. In particular, the accused device, and the Qi specification employ the backscatter modulated power signal (which is a form of reflection of the power signal from the transformer) to recognize the information which are data bits (the frequency of the pulses) included in the power signal. The backscatter modulated power signal would not be recognized as information without extracting the digital data bits, by measuring the frequency of the pulse stream. The process of extracting the digital data bits (the frequency of the pulses) from a modulated waveform is 'demodulation.' | **Paragraph 51**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying that methodology, the expert, in effect, attempts to show infringement under the doctrine of equivalents by testifying that "[t]he backscatter modulated power signal would not be recognized as information without extracting the digital data bits" even though amplitude modulation is used for the backscatter modulated power signal, and the frequency does not change. Rule 702(c), Fed.R.Evid.<br><br>The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. The expert is attempting to expand the scope of the claim back to what it was before amendment of the claim, by testifying that "extracting the digital data bits," which is just monitoring pulses, meets the requirements of the claim. Rule 702(c), Fed.R.Evid.; *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-37 (1942) ("By the amendment [the patentee] recognized and emphasized the difference between the two | |

| | | |
|---|---|---|
| | phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material."). | |
| | The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009). | |
| | The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). | |
| | The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. Rule 403, Fed.R.Evid. | |
| 52. The modulation schemes of the accused device is described in section 5.2 of the Qi Specification, stating: | **Paragraph 52**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying that methodology, the expert is | |

| | | |
|---|---|---|
| The Power Receiver (electrical device) communicates to the Power Transmitter using backscatter modulation. For this purpose, the Power Receiver modulates the amount of power that it draws from the Power Signal. The Power Transmitter detects this as a modulation of the current through and/or voltage across the Primary Cell. In other words, the Power Receiver and Power Transmitter use an amplitude modulated Power Signal to provide a Power Receiver to Power Transmitter communications channel.<br><br>See, Qi Specification, Section 5.2.1 at p. 86. | effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. The documentation relied upon by the expert says "the Power Receiver and the Power Transmitted use an *amplitude modulated* Power Signal to provide a Power Receiver to Power Transmitted communications channel." This is monitoring the *amplitude* of the pulses; it is *not* monitoring the *frequency* of the pulses. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002).<br><br>The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.<br><br>The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. Rule 403, Fed.R.Evid.<br><br>The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.<br><br>The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| 53. As construed in the Qi specification, the power signal containing the data stream (frequency of pulses), which is the modulated waveform, is received by the power transmitter (the primary coil). The pulse monitoring circuitry monitors the frequency of the pulses of the data stream from the primary coil, to extract data bits which provide the information to control the switch. See element No. 3 in the attached Exhibit 11. Section 5.2.2.2 of the Qi specification, entitled "Bit encoding scheme" describes the digital bit stream (frequency of pulses) that is received at the power transmitter and monitored and extracted by the pulse monitoring circuitry in order to control the switch circuitry. | **Paragraph 53**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying that methodology, the expert is effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). |
| | The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. |
| The Power Receiver shall use a differential bi-phase encoding scheme to modulate data bits onto the Power Signal. For this purpose, the Power Receiver shall align each data bit to a full period t CLK of an internal clock signal, such that the start of a data bit coincides with the rising edge of the clock signal. The Receiver shall encode a ONE bit using two transitions in the Power Signal, such that the first transition coincides with the rising edge of the clock signal and the second transition coincides with the falling | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. Rule 403, Fed.R.Evid.

The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

edge of the clock signal. The Receiver shall encode a ZERO bit using a single transition in the Power Signal, which coincides with the rising edge of the clock signal.

See, the Qi Specification, Section 5.2.2.2 at p. 87.

54. Figure 36, at p. 88 illustrates the encoding scheme, demonstrating that the ONE and ZERO values correspond to the frequency of the pulses of the encoded waveform. Necessarily, the frequency of the data bit pulses is monitored in order to distinguish the correct ONE and ZERO values.

**Paragraph 54**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying that methodology, the expert is effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002).

The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. The expert is attempting to expand the scope of the claim back to what it was before amendment of the claim, by testifying that monitoring the pulses "necessarily" is equivalent to the claim requirement of monitoring the *frequency* of the pulses. Rule 702(c), Fed.R.Evid.; *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-37 (1942) ("By the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material.").

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. This testimony will confuse the jury concerning the difference between *exact* infringement required for literal infringement, and equivalents which are barred by the doctrine of prosecution history estoppel. Rule 403, Fed.R.Evid.

The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid.

| | |
|---|---|
| 55. The accused device uses the above-described encoding scheme to encode the data bits (frequency of pulses) within the amplitude modulated power signal as described by the Qi specification. Once demodulated by the charger's pulse monitoring circuitry, the information pulses (frequency of pulses) are monitored for the purpose | **Paragraph 55**: This witness does not have personal knowledge of whether "[t]he accused device uses the above-described encoding scheme ...", and cannot testify to facts concerning which he lacks personal knowledge. Rule 602, Fed.R.Evid.; Rule 56(c)(4), Fed.R.Civ.P.

The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| 1 | of controlling the on and off state of the charging circuitry. The position of the ONEs and ZEROs in time, corresponding to the frequency of the digital pulses, convey meaningful information that is interpreted by the charger's pulse monitoring circuitry for control, which includes entering an on or off state. Not monitoring the frequency of the pulses, and the changes or position in time of the pulses corresponding to the frequency, would result in no information transferred and failure of the system to function. Thus, it is essential to monitor the frequency of the pulses to interpret the information that drives the circuitry to control the on and off state of the system. | Accused Devices to meet the language of the claim *exactly*. The expert admits that the power signal is "amplitude modulated," which fails to meet the exact requirement for literal infringement. Instead of applying a literal infringement methodology, the expert is effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). |

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.

The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury concerning literal infringement. This testimony will confuse the jury concerning the difference between *exact* infringement required for literal infringement, and equivalents which are barred by the doctrine of prosecution history estoppel. Rule 403, Fed.R.Evid.

The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the referenced documents

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

|  |  |  |
|---|---|---|
| | accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| 56. See paragraphs 22 - 35 above, identifying how one skilled in the art would recognize the primary coil of the Qi wireless charger as a transformer, or at least the equivalent of a transformer. The difference between the coil of the Qi wireless charger and a transformer is insubstantial. One skilled in the art would recognize that the coil in the accused device converts electrical current into a magnetic field, which inductively links to a secondary coil, resulting in current delivery to a load on the secondary coil, to allow the transmission of electrical energy without a conductive path from the primary and secondary coils. The magnetic field propagates through nonconductive media, such as air. | **Paragraph 56**: The expert testimony is inconsistent, and conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices.

The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P.

The expert testimony is not relevant unless the referenced documents accurately describe the actual | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

- 66 -

| | | |
|---|---|---|
| | structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury. Rule 403, Fed.R.Evid. | |
| 57. One skilled in the art would further recognize that pulse monitoring circuitry described in paragraphs 50-55 above is measuring the frequency of pulses (encoded data bits) extracted from the modulated waveform received at the primary coil. The charger's pulse monitoring circuitry extracts the frequency of the digital data bit pulses from the modulated waveform from the primary coil. The data bits (as determined by the frequency of pulses) are recognized as instructions, necessarily based on the frequency of the digital data bit information pulses, and controls the power signal based thereon. | **Paragraph 55**: The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying a literal infringement methodology, the expert is effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). | |
| | The methodology followed by the expert is unreliable. This claim element requiring monitoring the *frequency* of pulses is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. The expert is attempting to expand the scope of the claim back to what it was before amendment of the claim, *i.e.*, back to merely "monitoring the pulses." Rule 702(c), Fed.R.Evid.; *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-37 (1942) ("By the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material."). | |
| | The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid. There is no admissible testimony from a witness | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury. Rule 403, Fed.R.Evid. | |
| | The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. | |
| | The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| 58. Based on the foregoing, it is my opinion that the accused device marketed by Defendants practices each element as recited in Claims 31, 32, 39, and 40 of the '648 Patent, and as defined in the Court's Claim Construction. Accordingly, it is my opinion that the accused device infringes Claims 31, 32, 39, and 40 of the '648 Patent. | **Paragraph 58**: The expert failed follow the Court's claim construction requiring that the claimed switching circuitry must be located before the transformer (referring to the transformer disclosed in the patent with its primary winding connected to the AC input). Dkt. #87, Order, at 24. Rule 702(c) & (d), Fed.R.Evid.; *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1321 (Fed. Cir. 2009). The expert testimony conflicts with the Court's claim construction that a transformer must be a static electrical device, and not a dynamic one. Rule 702(c) & (d), Fed.R.Evid.; *Liquid Dynamics Corp. v. Vaughan* | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | |
|---|---|
| 1 | *Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006). |
| 2 | |
| 3 | The expert failed to follow the agreed claim construction for the claim limitation "wherein the cable assembly consumes substantially no power while in the off state." The parties agree that the correct construction of this claim element requires evidence that the power must be reduced below the phantom load that would otherwise be achieved if the patented power saving feature of the 648 Patent was not present. Rule 702(c) & (d), Fed.R.Evid. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | The methodology followed by the expert is unreliable. This claim element is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. Instead of applying a literal infringement methodology, the expert is effectively attempting to show infringement under the doctrine of equivalents, and his methodology is barred by the doctrine of prosecution history estoppel. Rule 702(c), Fed.R.Evid.; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | The methodology followed by the expert is unreliable. This claim element requiring monitoring the *frequency* of pulses is limited to literal infringement, which requires the Accused Devices to meet the language of the claim *exactly*. The expert is attempting to expand the scope of the claim back to what it was before amendment of the claim, *i.e.*, back to merely "monitoring the pulses." Rule 702(c), Fed.R.Evid.; *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, 136-37 (1942) ("By the amendment [the patentee] recognized and emphasized the difference between the two |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

SNELL & WILMER
L.L.P.
LAW OFFICES
ONE ARIZONA CENTER
400 E. VAN BUREN, SUITE 1900
PHOENIX, ARIZONA 85004-2202

| | | |
|---|---|---|
| | phrases[,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material."). | |
| | The expert testimony is inadmissible, because it does not reliably apply the correct claim construction to the facts of this case. Rule 702(d), Fed.R.Evid. | |
| | The expert testimony is based upon insufficient facts and data. Rule 702(b), Fed.R.Evid.  There is no admissible testimony from a witness having personal knowledge, as required by Rule 56(c)(4), Fed.R.Civ.P., that the documentation relied upon by the expert accurately describes the actual operation of the accused devices. | |
| | The documents referenced by the expert are hearsay, and no witness having personal knowledge has testified that the portion of the documents relied upon by this expert accurately describes the actual operation of the accused devices. Rule 801, Fed.R.Evid. & Rule 56(c)(4), Fed.R.Civ.P. | |
| | The expert testimony is not relevant unless the referenced documents accurately describe the actual structure, function, and operation of the accused devices. Rule 402, Fed.R.Evid. | |
| End of Tobias Declaration | The probative value of this expert testimony, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury. Rule 403, Fed.R.Evid. | |

- 70 -